[No. 7102.   Decided March 28, 1908.]

MARY JANE HAYDEN, *Appellant*, v. REINHOLD ZERBST *et al.*, *Respondents*.[1]

HUSBAND AND WIFE—CONVEYANCES BETWEEN—COMMUNITY PROPERTY—SEPARATE PROPERTY OF HUSBAND.   Under Bal. Code, § 4539, providing that a deed from a husband or wife to the other shall divest the grantor of any community interest and create a separate estate in the grantee, property acquired by and in the possession of a husband becomes his separate property upon his wife's making a quitclaim deed thereof to him, although he subsequently proceeded to remove clouds from the title by purchasing tax titles and other interests, where such steps and the quitclaim deed were all parts of one transaction whereby the husband, living separate and apart from the wife, sought and claimed to acquire a separate estate.

[1]Reported in 94 Pac. 909.

ESTOPPEL—FAILURE TO ASSERT TITLE—HUSBAND AND WIFE—COM-
MUNITY PROPERTY—SEPARATION AGREEMENT. A wife who entered into
a separation agreement in 1886, whereby the community property
was divided and future acquisitions were to be considered the sep-
arate estate of either husband or wife, who thence lived separate
and apart, is estopped to claim an interest in lands acquired by the
husband in 1892, where she then also made a quitclaim deed of the
property to him, and made no claim thereto for more than fourteen
years and for more than five years after her husband had sold the
same to innocent purchasers.

Appeal from an order of the superior court for Clarke
county, McCredie, J., entered May 14, 1907, in favor of the
defendants, after a trial on the merits before the court without
a jury, in an action to quiet title to real property condemned
for railway purposes. Affirmed.

*McMaster & Back,* for appellant.

*E. M. Green,* for respondents.

MOUNT, J.—The Portland and Seattle Railway Company
brought an action against the appellant and the respondent
Reinhold Zerbst, to condemn for railway purposes all of lot
8, in block 35, in the city of Vancouver, as platted by Esther
Short. These two defendants each answered separately, Rein-
hold Zerbst claiming to be the owner of the whole lot, and
Mary Hayden claiming an undivided one-half interest therein.
Thereafter a judgment in condemnation was entered, and the
lot was taken by the railway company. The damages to the
owner were assessed at $1,200, which was paid into court.
Thereupon the court tried out the question of title to the lot,
in order to determine the proper disposition of the $1,200.
Upon this trial the court found that Reinhold Zerbst was en-
titled to all the money, and judgment was entered accord-
ingly. Mary Jane Hayden appeals from that order.

There is no dispute about the facts. They are principally
of record, and are as follows: The lot in question was a part
of the donation land claim of Amos Short and wife, Esther
Short. In 1855 this lot was platted as a part of Vancouver

by Esther Short. In 1859 Esther Short, by a quitclaim deed, conveyed the lot to Sumner Barker. Thereafter there were many other conveyances of portions of the Short donation claim, and in order to perfect the title, which had become quite complicated and uncertain, a committee purchased from the heirs of Esther Short all their interest in the addition, and subsequently, on May 10, 1880, this committee deeded the lot in question to six parties, one being Gay Hayden. Gay Hayden and Mary Jane Hayden, the appellant, were husband and wife from the year 1880 until May, 1902. On March 10, 1886, Gay Hayden and Mary Jane Hayden, his wife, entered into an agreement as follows:

"Whereas Gay Hayden and Mary Jane Hayden, his wife, residents of Clarke county, Washington territory, have entered into an agreement this day concerning their property in said territory, and have divided their community property and have caused to be conveyed, set over, assigned and delivered each to the other his or her allotted share of said property, to the end and with the intent that each of said parties shall hold or enjoy his or her share of said property in severalty and as separate property; now therefore, in consideration of the premises and of one dollar by each to the other paid, said Gay Hayden and Mary Jane Hayden do mutually covenant and agree, each to and with the other, that from this date henceforth each shall have, hold and enjoy in severalty, and as separate property, whatever and all lands, goods, chattels and personal property of every description, which either shall acquire, earn, or produce while they shall remain husband and wife, without any claim, interference or interruption of either by the other, and each hereby surrenders unto the other the sole, separate and absolute possession and control of all property which each of said parties has received under and by virtue of the division aforesaid. In witness whereof the said parties hereunto set their hands and seals in duplicate this 10th day of March, A. D. 1886. (Signed and witnessed.)"

This agreement was recorded in the record of deeds in the auditor's office of Clarke county, where the land was located. Thereafter Gay Hayden and Mary Jane Hayden lived sep-

arate and apart and conducted business separately. They bought and sold real estate without the other joining in the conveyances. In 1892 the other five parties who had obtained title from the heirs of Esther Short conveyed by quitclaim deed all their interest in the lot in question to Gay Hayden. Mary Jane Hayden joined in this deed to her husband. In March, 1893, Gay Hayden obtained a tax deed for this lot from the city of Vancouver, being the purchaser at a tax sale. He also in the same year obtained a tax deed from the county, being the purchaser at a county tax sale. In 1894 he also obtained a deed from the heirs of Sumner Barker, deceased. In September, 1901, Gay Hayden sold and conveyed the lot to Terrence Furey. Mary Jane Hayden did not join in this conveyance. Terrence Furey, prior to the purchase of the lot, was informed that Mary Jane Hayden was the wife of the grantor but that she had no interest in the lot. On March 8, 1906, Terrence Furey sold and conveyed the lot to Reinhold Zerbst, who at said time did not know that Gay Hayden was a married man. Gay Hayden died intestate in Clarke county in May, 1902, and his estate was probated in that county. His wife, Mary Jane Hayden, made no claim to this lot until this action was begun in October, 1906.

It is argued by the appellant that the deed of 1859, from Esther Short to Sumner Barker, conveyed a perfect title to Barker, because the lot was a part of the donation land claim of Amos and Esther Short; that this lot was a part of the half of that donation land claim which belonged to Mrs. Short, and that Gay Hayden acquired no title to the lot until the years 1893 and 1894, when he acquired the tax title and also acquired the interest of the heirs of Sumner Barker; that the title which Gay Hayden acquired prior to that time was of no validity; that the contract entered into between Gay Hayden and Mary Jane Hayden was not authorized by law, was contrary to the policy of the community property law, and void, and that the legal title of the lot in question, having been acquired by Gay Hayden after that time, was

community property which could not be conveyed without the wife joining therein.

We need not stop to inquire into the validity of the contract of March 10, 1886, as above set out, as affecting this lot or property acquired by Gay Hayden after that date, or as to the legal effect of the deed from Esther Short to Sumner Barker. The fact is that Gay Hayden was claiming the ownership of this lot in 1892 by virtue of a deed of that date, and his wife, evidently in order to quitclaim any community interest she might have therein, joined in that deed. The statute then in force, Bal. Code, § 4539 (P. C. § 3886), provides:

"A husband may give, grant, sell, or convey directly to his wife, and a wife may give, grant, sell, or convey directly to her husband his or her community right, title, interest or estate in all or any portion of their community real property. And every deed made from husband to wife, or from wife to husband, shall operate to divest the real estate therein recited from any or every claim or demand as community property, and shall vest the same in the grantee as separate property."

Under this statute Mrs. Hayden was authorized to convey her community interest in the lot to her husband, as his separate property. She intended to do so, and did. They were living separate and apart at that time, and continued thereafter to live separate and apart, and bought and sold and conveyed real estate as separate property without the other joining therein. When Gay Hayden acquired the title to this lot from the Short heirs and from the committee, he acquired an interest in the property. While the record does not disclose who was in the actual possession of the lot at that time, it follows, we think, from the facts stipulated, that Gay Hayden had possession from the time of the conveyance to him in 1892. There were still certain clouds upon the title, such as delinquent taxes and the deed to Sumner Barker. Mr. Hayden then proceeded to remove these clouds by purchases at tax sales and by purchase of the interest of the Barker heirs, and thus finally removed all clouds against his title. We think

all these steps were a part of one transaction, and that the deed from Mrs. Hayden to her husband, even though a quitclaim deed and made before he had acquired all outstanding clouds or claims, converted the lot into the separate property of her husband.

But if we were to hold that this deed from Mrs. Hayden to her husband did not have the effect to make the property separate property of the husband, we are of the opinion that the appellant is now estopped to claim that she has any interest in the lot, for the reasons, that she held out to the world by the agreement and deed before stated that the lot was the separate property of her husband; that she stood by and knew that her husband was holding and treating the property as his separate property; that he sold it and conveyed it as such to purchasers who relied upon the statements that the lot was separate property, and she made no claim otherwise until she had been made a party defendant by the railway company in an action to condemn the lot, more than five years after her husband had sold the property and fourteen years after she had by deed quitclaimed her interest to him.

For these reasons the judgment should be affirmed, and it is so ordered.

HADLEY, C. J., CROW, FULLERTON, DUNBAR, ROOT, and RUDKIN, JJ., concur.