THOMAS CRONIN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7995.   Promulgated October 1, 1927.

On the evidence *held* that certain noninterest-bearing demand promissory notes were not bona fide paid in for stock of the petitioner and may not be included in its invested capital for the years 1920 and 1921 under section 326(a)(2) of the Revenue Acts of 1918 and 1921.

*William G. Heiner, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits taxes for the calendar years 1920 and 1921 in the respective amounts of $1,527.10 and $9,001.32. The sole issue presented is whether the petitioner is entitled to include in its invested capital for the years involved, the amount of $112,000, being the face value of certain noninterest-bearing demand promissory notes paid in for stock of a par value of the same amount under the circumstances set forth below.

#### FINDINGS OF FACT.

The petitioner is a Pennsylvania corporation with its principal office and place of business at Pittsburgh, Pa.

The petitioner had issued and outstanding, prior to March 31, 1917, 780 shares of capital stock of the par value of $100 per share, or a total outstanding capital stock of $78,000. Of the 780 shares of stock outstanding at that time, Thomas Cronin owned 728 shares, 49 shares

were owned by his son, Harry Cronin, and the remaining three shares were owned by other children of Thomas Cronin. Thomas Cronin was petitioner's president and Harry Cronin was its secretary.

At a meeting of the board of directors of the petitioner held on March 31, 1917, the following resolution was adopted:

WHEREAS, said Thomas Cronin has subscribed for, and has agreed to take and pay for one hundred twenty (120) shares of the capital stock of the said Thomas Cronin Company, fully paid and non-assessable, and has agreed to give his promissory note payable on demand and dated March 31, 1917, in the amount of $12,000 in payment for said one hundred and twenty (120) shares of said capital stock of Thomas Cronin Company.

Now, THEREFORE, be it and it is hereby

RESOLVED, That the proper officers of Thomas Cronin Company are hereby authorized, empowered and directed to issue certificates to said Thomas Cronin for one hundred twenty (120) shares of the capital stock of said Thomas Cronin Company at par value fully paid and non-assessable and to accept in payment therefor, said Thomas Cronin's promissory note, payable on demand, in the amount of $12,000.

Pursuant to this resolution, Thomas Cronin executed and delivered to the petitioner his noninterest-bearing demand promissory note for $12,000, dated March 31, 1917, and received from the petitioner a certificate, properly executed, for 120 shares of its stock. At the time of executing and delivering to the petitioner his demand promissory note for $12,000, Thomas Cronin was entirely responsible and solvent and at all times until his death was fully able to pay the amount on demand.

Subsequent to March 31, 1917, and before July 16, 1918, the Thomas Cronin Co. issued a stock dividend in the amount of $10,000, thereby increasing its outstanding capital stock to $100,000.

At a special meeting of the board of directors held on July 16, 1918, the following resolution was adopted:

WHEREAS, at a special meeting of the stockholders of the Thomas Cronin Company, held at the office of the said Company at 17th and Muriel Streets, South Side, Pittsburgh, Pa., on June 4, 1918, at 2 P. M., an election was held for the purpose of voting on the increase of capital stock of said company from $100,000 to $200,000, said election being held at the request of the stockholders.

And, whereas, Mr. Thomas Cronin has offered to purchase the total amount of said increase of $100,000 of capital stock giving therefor in payment his promissory note for said sum of $100,000, payable to the order of the Thomas Cronin Company, * * *

We, the undersigned, being all of the stockholders of the Thomas Cronin Company, a Pennsylvania corporation, do hereby agree that the full amount of the increase of the capital stock of said company, voted by the Board of Directors at a meeting held June 4, 1918, may be issued to Thomas Cronin and we hereby waive all interest, right or title which we may have to share any said increase in favor of the said Thomas Cronin.

Now, Therefore, be it and it is hereby resolved, that the proper officers of this company be and they are hereby authorized, empowered and directed to issue

certificates to said Thomas Cronin for 1,000 shares of the capital stock of the said Thomas Cronin Company at par value, fully paid and non-assessable, upon delivery by him of said promissory notes properly signed by him to the said officers of the Thomas Cronin Company.

Pursuant to this resolution Thomas Cronin delivered to the petitioner his noninterest-bearing demand promissory note for $100,000, dated July 16, 1918, and received from the petitioner a certificate properly executed for 1,000 shares of its capital stock. At the time of executing and delivering to the petitioner his demand promissory note for $100,000, Thomas Cronin was entirely responsible and solvent and at all times until his death his assets were sufficient to liquidate the note within a reasonable time after demand.

Thomas Cronin died on October 31, 1918, and up to the time of his death nothing had been paid on the above-mentioned notes.

By the will of Thomas Cronin, 52 per cent of his stock in the petitioner was bequeathed to Harry Cronin and 48 per cent to two sisters of Harry Cronin. Shortly thereafter the interest of the sisters in the petitioner was purchased by Harry Cronin, after which he owned all but one share of the capital stock of the petitioner.

On November 20, 1919, the petitioner released the estate of Thomas Cronin from all liability on account of the indebtedness represented by the above-mentioned notes. The minutes of the meeting held on November 20, 1919, read as follows:

MINUTES.

Of a Directors' Meeting of the Thomas Cronin Company, held, pursuant to a call of the President, on Thursday, November 20, 1919, at 9:30 o'clock A. M., at the office of the Commonwealth Trust Company of Pittsburgh, No. 312 Fourth Avenue, Pittsburgh.

Present: Harry Cronin, George H. Stengel and Alice C. Parrish, being all of the directors of the company.

Mr. Stengel offered the following resolution:

"Whereas the estate of Thomas Cronin is indebted to the Thomas Cronin Company in the sum of $112,000, with interest, and

"Whereas suit has been brought by this company against the said estate at No. 608, January Term 1920 for the purpose of preserving the lien of said indebtedness against the estate of the decedent, and

"Whereas, Harry Cronin has agreed to assume the said indebtedness, therefore, be it,

"RESOLVED, that in consideration of the foregoing assumption of the indebtedness by Harry Cronin, and for value received, the Thomas Cronin Company does hereby release the estate of Thomas Cronin, Deceased, and Alice Cronin Parrish and James Cronin Dall, residuary legatees and devisees under the will of said decedent, from said indebtedness, and from all liability for the same."

On motion of Mr. Stengel, seconded by Mrs. Parrish, the resolution was unanimously adopted.

Adjourned.

(Signed)          GEORGE H. STENGEL,
                              *Secretary.*

The agreement by Harry Cronin to assume the indebtedness of the estate to the petitioner, which is referred to in the above-mentioned resolution, reads as follows:

For value received, I, Harry Cronin, do hereby assume and agree to pay the following two (2) notes made by Thomas Cronin to the order of the Thomas Cronin Company, namely,

Demand note, dated March 31, 1917 for $12,000.

Demand note, dated July 16, 1918, for $100,000.

And I do hereby promise and agree to procure from the Thomas Cronin Company on or before September 30, 1919, a proper, legal discharge of the Estate of Thomas Cronin, Deceased, from any and all liability by reason of said notes.

Witness my hand and seal this 7th day of August, 1919.

HARRY CRONIN  [SEAL]

Witness:

GEORGE H. STENGEL.

The financial condition of Harry Cronin at the time of the assumption of the estate's indebtedness was such that the petitioner could not have collected the full sum of $112,000 upon demand.

The notes for $12,000 and $100,000 were carried on the books as accounts receivable but at no time were they ever pledged for any purpose whatsoever. In fact they have always remained in the files of the petitioner. The petitioner, however, borrowed and used in its business amounts ranging from $20,000 in 1917 to $195,000 in 1920.

Thomas Cronin while he was president of the petitioner always endorsed personally and individually, all of the notes of the petitioner.

In computing the petitioner's invested capital for the years 1920 and 1921, the Commissioner excluded the amount of $112,000 represented by the two notes given to the petitioner by Thomas Cronin in payment for its stock of a like par value.

## OPINION.

LOVE: The respondent in denying the petitioner's contention that the two notes amounting to $112,000 paid in by Thomas Cronin for stock of the petitioner should be included in its invested capital for the years 1920 and 1921, takes the position that: (1) Under the laws of the State of Pennsylvania it is unlawful for a corporation to issue stock for notes, and that notes received in violation of such laws can not be included in invested capital under the provisions of section 326(a)(2) of the Revenue Acts of 1918 and 1921; (2) the notes were not in fact bona fide paid in for stock if the parties to the transaction intended that they were not to be collected; (3) in no case may the notes paid in for stock be included in invested capital in an amount in excess of their actual cash value at the time paid in. We will consider the respondent's contentions in the order that they are stated.

In the *Appeal of American Steel Co.*, 1 B. T. A. 839, the Board held that the notes involved therein, which do not differ from those involved in the instant appeal except in that they were interest-bearing notes, were not illegal or void under the laws of Pennsylvania, and that they satisfied in every respect the provisions of section 326(a)(2) of the Revenue Act of 1918, being tangible property paid in for stock. In respect of notes paid in for stock, the Revenue Act of 1921 does not differ from the Revenue Act of 1918. The notes paid in by Thomas Cronin for stock of the petitioner may be included in its invested capital for the years involved provided that they comply with the provisions of section 326(a)(2) of the Revenue Acts of 1918 and 1921 in other respects which are prerequisite to their inclusion therein.

On the second point it was contended by the respondent that the notes were not in fact bona fide paid in for stock within the meaning of section 326(a)(2) of the 1918 and 1921 Revenue Acts, his contention apparently being based upon the fact that nothing has ever been paid on the notes either by Thomas Cronin before his death or by Harry Cronin, since he purported to assume the indebtedness on account thereof, and upon the further fact that the estate of Thomas Cronin was released from all liability on account of the notes given by the decedent.

The petitioner urges that under the provisions of the Revenue Acts of 1918 and 1921, it need only show that Thomas Cronin was solvent and responsible at the time the notes were paid in to entitle it to include the notes in its invested capital. It is obvious that this contention carries with it the assumption on the part of the petitioner that the notes were in fact bona fide paid in for stock. Whether the notes were bona fide paid in for stock is one of the questions we are called upon to decide, the respondent having denied that such was the fact. If the parties to the transaction intended that the notes should not be collected, then we must hold that they were not bona fide paid in for stock. We must look, therefore, to all of the circumstances surrounding the transaction in order to determine that fact.

It is necessary to bear in mind that at the date of the execution of the $12,000 note Thomas Cronin owned 728 out of a total of 780 shares of stock of the petitioner and was its dominating spirit. His son owned 49 out of the 52 remaining shares. The will and intention of Thomas Cronin may, to all intents and purposes, be held to have been the will and intent of the corporation. The question, therefore, is, Did Thomas Cronin, as president of petitioner, intend to demand of Thomas Cronin, the individual, payment of that note? The conditions under which the $100,000 note was given were practically the same as when the $12,000 note was given. All the cir-

cumstances incident to these transactions, both prior and subsequent to the execution of the notes, point unmistakably to the conclusion that no such intention was present in the mind of Thomas Cronin.

The evidence in this proceeding shows that Thomas Cronin was solvent and financially responsible at the time he gave to the petitioner his demand notes in payment for its stock. Although 19 months had elapsed since the date of the first note, no payment had been made. At the time of his death his estate was sufficiently large to liquidate the notes, yet, notwithstanding that fact and the fact that nothing had been paid thereon, the petitioner released his estate from all liability on account thereof and Harry Cronin, who at the time of the release was petitioner's president, purported to assume the indebtedness. At the time the petitioner released the estate of Thomas Cronin from liability on account of the notes and permitted Harry Cronin to assume the obligations, the financial condition of Harry Cronin was such that he could not have paid the notes in full if called upon to do so. In fact, his total assets, exclusive of his holdings in the petitioner, were not more than $67,500 at that time. The record herein does not disclose his liabilities and consequently the net worth of Harry Cronin can not be determined. It is clear, however, that the petitioner released a solvent debtor, the estate of Thomas Cronin, and permitted the debts owing by it to be assumed by a person, who, it is admitted, could not pay the notes in full on demand.

The petitioner's president testified at the hearing in this appeal that its capital stock was increased and sold to Thomas Cronin for his demand notes for the purpose of augmenting its borrowing power and strengthening its credit rating. It will be observed, however, that the notes were kept in the petitioner's files and never pledged or used for any purpose whatsoever, during which time nothing was paid thereon. While the notes were thus held by the petitioner, amounts ranging from $20,000 in 1917 to $195,000 in 1920 were borrowed and used in conducting its business. Although it was necessary to borrow money to conduct its business, the notes in question were not made part of petitioner's working capital.

In *Appeal of Citizens Underwriters Agency*, 2 B. T. A. 1116, the petitioner therein carried on its books, as bills receivable, $5,350 representing demand notes from stockholders given in 1907 for stock. These notes were never paid, notwithstanding the fact that the makers were financially responsible, nor was demand ever made for payment, although the petitioner borrowed money for its own use during the period. We found in that case that the notes were not bona fide paid in for stock.

Viewing all the circumstances incident to the transactions carried on by and between Thomas Cronin and the petitioner, and to the subsequent action taken by the petitioner, we are of the opinion that the notes given by Thomas Cronin were not *bona fide* paid in for stock. See *Ready Auto Supply Co.*, 2 B. T. A. 730. It is unnecessary, therefore, for us to discuss the third point raised by the respondent.

*Judgment will be entered for the respondent.*

Considered by LITTLETON and SMITH.