ROMIE C. JACKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23939. Promulgated April 11, 1930.

*A. F. Burke, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

## OPINION.

Love: Two of the four allegations of error presented by the petition have been settled by stipulation of the parties, leaving for our determination two issues, as follows: first, whether the petitioner derived any taxable gain as a distributee of the assets of the David Jacks Corporation upon its dissolution, and, second, in the event the first issue is decided adversely to the petitioner, the fair market

value of the live stock and lumber inventories of the Corporation at March 1, 1913.

The petitioner's contention that he derived no taxable gain upon dissolution of the Corporation and distribution of its assets in kind among the stockholders is predicated upon the theory that the Corporation, quoting petitioner's brief, " was not an ordinary commercial corporation having an identity separate and apart from its stockholders, but was always a mere agency or instrumentality adopted by the stockholders for their convenience, which held the property of the Corporation as an agent or trustee for its stockholders for a period of twelve years and then surrendered it to its stockholders in accordance with plans made at the time of the organization of said Corporation." The respondent has held that the petitioner derived a gain upon distribution of the Corporation's assets, equal to the difference between the March 1, 1913, value of the petitioner's stock and the value of the assets received by the petitioner upon such distribution. The parties agree that if the petitioner did derive a taxable gain, the amount of such gain was $114,444.65, subject to inventory adjustments at March 1, 1913, as the Board shall determine.

In effect, the petitioner asks us to disregard the corporate entity and to hold that the properties transferred to the Corporation in 1907 were held by it merely as an agent or trustee of the stockholders. The theory of the petitioner's case seems to be that the corporate entity should be disregarded because this was a family corporation. But no reason is offered why such preference should be shown a family corporation other than that the corporate entity was adopted for convenience and with the view that it would some day distribute its assets among the stockholders, and because it was not an ordinary commercial corporation.

Convenience as a motive for corporate organization is in no way unique. It is in fact probably the sole motive common to all corporate organizations. And we can find no reason, nor have we been offered one, why the fact that this was a family corporation organized for convenience should distinguish it from any other organized for convenience. We are not persuaded that, after having had the benefits and privileges of corporate holding and management while it was considered convenient, the petitioner as a stockholder should now have the corporate entity disregarded to avoid his incurrence of a tax liability.

Courts of equity do disregard the fiction of corporate entity when such action is necessary to prevent fraud or otherwise maintain substantial justice. *Erving V. Dwyer*, 18 B. T. A. 349. The Board will look through the corporate entity in an appropriate case, *Rubay Co.*,

9 B. T. A. 133. The legal distinction between a corporation and its stockholders is a matter of substance and not merely of form. *E. C. Huffman*, 1 B. T. A. 52. In *Winthrop Ames*, 1 B. T. A. 63, we said:

The courts have many times held that corporate entities may not be disregarded or confused with their stockholders. *Houston Belt & Terminal Railway Co.* v. *United States*, 250 Fed. 1; *Eisner* v. *Macomber*, 252 U. S. 189.

And in *John K. Greenwood*, 1 B. T. A. 291, we said:

The distinction * * * is preserved even when one person owns all the capital stock. *Peterson* v. *Chicago, etc. R. Co.*, 205 U. S. 384; *Appeal of Winthrop Ames*, 1 B. T. A. 63.

In discussing a contention that a corporate entity should be disregarded, we said in *Regal Shoe Co.*, 1 B. T. A. 898:

* * * Congress has in several respects throughout the Revenue Acts made it clear that the ownership of capital stock is to be treated as direct ownership of the stock and not indirect ownership of the corporate assets. Were this not so a liquidation distribution of such corporate assets among the stockholders could not result in gain or loss as it has been uniformly treated under the Revenue Act of 1918 and earlier acts. The decisions in *United States* v. *Phellis*, 257 U. S. 156, and in *Cullinan* v. *Walker*, 262 U. S. 134, are founded upon the doctrine that stock and corporate assets are not identical. It is upon the same principle that this Board decided *Huffman's Appeal*, 1 B. T. A. 52, *Greenwood's Appeal*, 1 B. T. A. 291, and *Buchmiller's Appeal*, 1 B. T. A. 380. We need not dwell upon the well recognized distinction between a corporation and its stockholders, nor repeat what so frequently has been said to the effect that the ownership by a corporation is not the ownership of its stockholders, and that the rights and liabilities of the former are separate from those of the latter. A corporation is not a mere form; it is a substantial legal being whose existence, rights and obligations are matters of substance, the recognition of which has permeated the entire economic existence of the Nation, and neither the Government nor the taxpayer will be heard in a bona fide case, except in extraordinary circumstances, to say that it is a mere fiction to be lightly disregarded. *Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U. S. 333.

We find nothing in this proceeding to warrant our consideration of it as having "extraordinary circumstances."

The petitioner has cited *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390, in which the Circuit Court of Appeals for the Tenth Circuit reversed the decision of the Board in *C. A. O'Meara*, 11 B. T. A. 101. This case is distinguishable in that the Circuit Court ruled that the corporation held the legal title to certain properties transferred to it by its organizers and stockholders upon express trusts as a managing trustee, and that the equitable title remained in the transferors. No comparable facts exist in the proceeding now under discussion.

The petitioner has also cited *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330. In that case the court held that while two companies were separate legal entities, yet, in fact, and for all practical pur-

poses, they were merged, one being merely a part of the other, acting as its agent and subject in all things to its proper direction and control. In our opinion the record of this proceeding does not indicate such a merger of entities of the stockholders and the David Jacks Corporation, as the court found in the case last cited.

It may be pointed out that one of the petitioner's other allegations of error in this proceeding is inconsistent with his contention that the corporate entity should be disregarded. The petitioner alleged, and the respondent has conceded, that certain dividends were received from the David Jacks Corporation in 1920 rather than during 1919, the taxable year involved. Yet, if the identity of the Corporation is to be disregarded in considering the distribution of its assets upon dissolution because the Corporation " was always a mere agency or instrumentality adopted by the stockholders for their convenience, which held the property of the corporation as an agent or trustee for its stockholders," then the income of the Corporation was income of the stockholders directly, rather than indirectly as dividends, and it should be taxed accordingly.

Assuming that upon its organization the stockholders did contemplate that the Corporation would be dissolved and its assets distributed after the deaths of their parents, we are not advised of any reason why such a fact constituted it a mere trustee or agent of its stockholders with respect to the property it held. The only record evidence of the contemplated life of the Corporation is that its assets would not be distributed during the lifetimes of David and Mary C. Jacks.

We approve the respondent's determination that the petitioner derived a taxable gain upon distribution of the Corporation's assets. It is, therefore, incumbent upon us to determine, under the petitioner's alternative allegation of error, the March 1, 1913, value of the Corporation's live stock and lumber inventories. The results of our consideration of these inventories are set out in our findings. We have in general accepted the testimony of the petitioner as to the fair market value of the live stock and the equipment immediately pertaining to it. Such changes as have been made in the values testified to by the petitioner have resulted from clouded or uncertain evidence which we have weighed in the light of the whole record or from computations patently suggested by the record.

The values which we have found for the lumber items are those claimed by the petitioner, based upon the number of board feet in each item and the corresponding value per thousand board feet. We have recomputed the value of each item and corrected the total value of the lumber inventory to eliminate mathematical errors.

The respondent valued each lumber item at the mill price as shown on the Corporation's books. We believe that consideration should be given to freight, drayage and related charges, necessarily incurred in laying the lumber down on the ranches where it was to be used.

We believe the fair market values of the lumber items as claimed by the petitioner to be correct and we have accordingly found such values, subject to the mathematical corrections above mentioned.

*Judgment will be entered under Rule 50.*