*9 OPINION.
Steknhagen :
Petitioner contends that the cash payment of $1,000,000 for its 10,000 shares establishes its invested capital under section 326(a)(1) of the Revenue Act of 1918, which provides in part:
That as used in this title the term “invested capital” for any year means * * * (1) actual cash, bona fide paid in for stock or shares * * *.
Respondent concedes that the money was paid in the form alleged, but denies the bona fides of the payment, arguing that the $1,000,000 amounted to no more than a loan which resulted in securing credit; that in fact petitioner’s shares were exchanged for the assets and liabilities of the partnership, and since the stockholders and partners were substantially identical, the incorporation was a reorganization governed by the provisions of section 331 of the Act, which would deny to the corporate assets here a value in excess of their cost of *10 acquisition to the partners. As there is no evidence of such cost, he concludes that his determination should be approved.
The Board has repeatedly had before it questions involving the substantive effect to be given formal acts in which transactions affecting tax liability are clothed, and has followed the principle enunciated by the Supreme Court in United States v. Phellis, 257 U. S. 156, that “ in such matters what was done, rather than the design and purpose óf the participants should be the test.” In numerous instances full recognition has been given to formal, though circuitous, steps taken by taxpayers in financial transactions where the results so attained might have been more simply or more directly achieved in another manner. Anna M. Harkness, 1 B. T. A. 127; Regal Shoe Co., 1 B. T. A. 896; Edward A. Langenbach, 2 B. T. A. 777; W. J. Hunt, 5 B. T. A. 356; United Stales Envelope. Co., 10 B. T. A. 84; Romie C. Jacks, 19 B. T. A. 559. A situation not unlike that here presented was considered in Minnie G. Brackett, Administratrix, 19 B. T. A. 1154, wherein three individuals transferred assets to a newly organized corporation in exchange for its check, which was immediately endorsed and returned to it in payment for shares of its stock. The Board recognized in the transaction a sale of assets from which taxable gain resulted.
In certain instances in which form has been disregarded, the evidence adduced has warranted the conclusion that the steps taken or acts done were never intended to be of substantive effect, but were designed merely as a subterfuge for avoiding taxation. Ready Auto Supply Co., 2 B. T. A. 730; Thomas Cronin Co., 8 B. T. A. 429; Coon Auto Co., 8 B. T. A. 763; aff'd., 35 Fed. (2d) 504.
In the instant proceeding the meticulous care taken by the petitioner in the issuance of its shares, together with the supporting reasons shown therefor, abundantly sustains its contention that the payment of the $1,000,000 was not a sham or a subterfuge and that the procedure adopted was not merely a scheme to avoid taxation. The acts done were designed to and did result in actual transfers of cash and other property of the incorporators to petitioner. They constituted a compliance with necessary and very real requirements of the Emergency Fleet Corporation’s contracting agent, the Federal Capital Issues Committee, and the California Commissioner of Corporations. They were taken only after consultation with representatives of the last two and pursuant to requirements of the first. To hold that the shares were issued in exchange for assets, as respondent .contends they were in effect, would deny all weight to the rulings of the Commissioner of Corporations and the Capital Issues Committee, and would set at naught the act of the Emergency Fleet Corporation’s agent, who let the contracts only upon the showing of financial responsibility which the payment of the million *11 dollars and subsequent acts were designed to establish, all matters of substantial importance. It was the incorporator’s direct purpose not to exchange shares for assets, because such a method would have required several months for an official valuation, and it was this delay which petitioner sought to and did avoid.
Under such circumstances it can not be held that the method of organization chosen involved vain steps to which substantive effect should now be denied, when such method was deliberately and openly adopted for substantial reasons at the time. Respondent advances as his reason for the disallowance of the $850,000, that the real estate and Liberty bonds, purchased with that amount of the paid-in capital, never became the absolute property of petitioner, but remained for practical purposes under the control of General Sherman and Harry Chandler. He relies for this view on the language and provisions of the stockholders’ agreement, which contains instructions for the guidance of the Trust Company. We find nothing in this instrument inconsistent with the ownership by petitioner of the real estate and bonds prior to a distribution of its assets or such of them as might remain after satisfaction of its creditors’ claims. While it directs that rents and interest derived from these assets shall not belong to petitioner, but be paid to Chandler and Sherman, such wording may be reasonably construed as the corporation’s authorization to its agent to pay income as received to specified parties. Such directions affirmatively imply ownership; the income, moreover, was reported in petitioner’s returns as amended. While petitioner might conceivably have restored the real estate and bonds to Sherman and Chandler to the fraudulent detriment of creditors, its stockholders did not authorize such an act and we may not entertain the assumption that they would. The same reasoning is applicable to the corpus as well as the income of the trust, both of which, being within petitioner’s power of disposition, were clearly subject to the claims of its creditors.
It is immaterial that the real estate and bonds were not invested in assets of direct use in shipbuilding, but were held in trust for petitioner’s use and benefit; Norman B. Livermore, 11 B. T. A. 428. It was necessary for petitioner to acquire sufficient financial responsibility to satisfy the Emergency Fleet Corporation, and this it did. As instruments in securing this credit, the assets represented by the $850,000 disallowed were clearly invested capital. Hewitt Rubber Co., 1 B. T. A. 424. And since they were within reach of creditors and at the risk of the business, they are within the purpose of the statutory definition of invested capital. LaBelle Iron Works v. United States, 256 U. S. 317.
*12 We Rave thus disposed of the controversy by holding that cash to the extent of $1,000,000 was paid in for stock or shares as prescribed in section 326, and since the respondent in his determination has eliminated $850,000 of this invested capital, it follows that his determination was incorrect and this amount should be restored. From the argument there appears some ambiguity as to the amount of $150,000 which was permitted by respondent to remain in invested capital. The evidence indicates, although not clearly, that this may properly be included because it represents the note of $150,000. Hewitt Rubber Co., supra. In argument, however, counsel for both parties seem to adopt the hypothesis that the $150,000 represents the partnership assets, although it appears fairly clear, that the assets were not in fact transferred directly by the partnership to the corporation in exchange for the corporation’s stock, but in exchange for $150,000 covered by the certificates of deposit. Since the respondent’s determination of the deficiency was not, so far as appears, predicated upon section 331, there is no presumption that section 331 applies or that any of the facts contemplated by that section are present. The evidence does not disclose circumstances of such a reorganization or change of ownership as is contemplated by section 331, and we therefore have no reason to disturb the allowance of $150,000 recognized in the respondent’s determination.

Judgment will be entered under Rude 50.