Bertha L. Crosby v. Commissioner.
Crosby v. Commissioner
Docket No. 79375.
United States Tax Court
T.C. Memo 1961-272; 1961 Tax Ct. Memo LEXIS 73; 20 T.C.M. (CCH) 1422; T.C.M. (RIA) 61272; September 29, 1961
Albert Olsen, Esq., for the petitioner. Wilford H. Payne, Esq., for the respondent. FAY
Memorandum Opinion FAY, Judge: The Commissioner has determined a deficiency in petitioner's income tax for the year 1956 in the amount of $16,695.26. The only issue for decision is whether the basis of certain property is to be computed in accordance with section 1012 of the Internal Revenue Code of 1954 or section 1014 of the Code. All of the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below. Prior to January 1, 1943, Harry W. Crosby, hereinafter referred to as the decedent, and the petitioner owned as husband and wife considerable real and personal property in the State of Washington with a value *75 in excess of $400,000, all of which was community property except certain stock of the American Telephone and Telegraph Company with a value of approximately $50,000. This stock was held in an irrevocable trust established by the decedent in 1922 for the benefit of petitioner and was the separate property of petitioner. Most of the property owned by petitioner and the decedent as community property was real estate located in King County, Washington. Petitioner and the decedent, purportedly desirous of partitioning their community property between themselves so that each would own a portion of the property as his or her separate property, entered into an agreement dated December 31, 1942, which provided for the division of their community property into approximately two equal shares. Thereafter and pursuant to this agreement, the petitioner and the decedent executed deeds conveying to each other the properties each was to get under this agreement. The deeds were recorded in the offices of the County Auditor for the respective counties in which the properties were situated. During each of the taxable years 1943, 1944, 1945, 1946, and 1947, both petitioner and the decedent realized *76 substantial amounts of taxable income from their respective properties, upon which an appreciable amount of federal income tax became due and payable. Notwithstanding the division of their properties, petitioner and the decedent for federal income tax purposes treated the income from their respective properties, except that received by petitioner from the stock in trust, as community property and filed their separate federal income tax returns for the years 1943 to 1947, inclusive, on such a basis. This community treatment of their separate incomes resulted in some income tax savings to them. However, the income from the properties standing in the names of petitioner and the decedent was kept separate and each maintained and controlled the income from his or her respective properties. Decedent died testate on August 19, 1953. On or about November 12, 1954, the executor of decedent's estate filed an estate tax return with the director of internal revenue at Tacoma, Washington, which showed a gross estate of $910,739.48. In making this return, all property standing in the name of the decedent was treated as his separate property and all property standing in the name of petitioner was *77 treated as her separate property. The latter property was not included in the return. Furthermore, the property standing in the name of petitioner was not included in the inventory of decedent's estate at the time of probate and was not distributed to petitioner as part of that estate. Subsequently, the estate tax return of the decedent was audited by the Internal Revenue Service. On the audit of said return, the Commissioner of Internal Revenue took the position that inasmuch as the decedent and petitioner had during the years 1943 to 1947, inclusive, treated the income from the properties owned by each of them as community income, the properties so owned by the decedent and petitioner, except for the stock held in trust, should be treated as community property for federal estate tax purposes under the doctrine announced in the case of Estate of George Kingdon, 9 T.C. 838 (1947). The Internal Revenue Service then determined that the net value of the de cedent's property and the net value of the petitioner's property, except for the stock in trust, were to be added together and one-half of this sum was to be the adjusted gross estate of the decedent for federal estate *78 tax purposes. As a consequence of this and other adjustments, an estate tax deficiency resulted which was ultimately assessed and paid. A claim for refund of federal estate tax was timely filed with the district director under date of February 20, 1959, contesting the adjustments made in the audit of the estate tax return by the Internal Revenue Service. On March 17, 1961, the district director issued to the estate a notice of rejection of its claim. Among the properties standing in the name of petitioner at the time of decedent's death, there were three apartment buildings, herein identified as the Dover, Doris and Oleta Apartments. These apartment properties were a part of the previously referred to property determined by the Internal Revenue Service after audit to be includible in the gross estate of the decedent. The Dover Apartments had been sold by petitioner in 1946 as an installment contract at a price of $85,000.00. At the time of the sale, petitioner's cost basis was $54,771.12. Expenses of sale amounted to $3,910.00 and gain on the sale was $31,318.37, or 36.845 percent of the purchase price. Less than 30 percent of the purchase price was paid during the year of sale *79 and the gain subsequent to that time was reported by petitioner on an installment basis. The unpaid balance on this contract as of the time of decedent's death on August 19, 1953, was $55,013.77. The Doris Apartments were sold by petitioner in November 1953 on an installment contract basis for a price of $60,000, which the parties agree was the value thereof on August 19, 1953. The parties have further agreed that if petitioner's basis is considered to be the original purchase price, less depreciation, then there was a gain on this sale of $34,035.06, or 56.725 percent of the purchase price. However, if petitioner's basis in the property is to be considered as its value at the time of decedent's death, then the parties agree there was no gain on this sale. The Oleta Apartments were sold by petitioner in February 1954 on an installment contract basis for a price of $85,000, which the parties agree was the value thereof on August 19, 1953. The parties have further agreed that if petitioner's basis is considered to be the original purchase price, less depreciation, then there was a gain on this sale of $64,319.17, or 75.6696 percent of the purchase price. However, if petitioner's *80 basis in the property be considered as its value at the time of decedent's death, then the parties agree there was no gain on this sale. During the year 1956 petitioner received the following amounts in partial or full payment of the purchase price of said properties: Dover Apartments
$ 9,626.80
Doris Apartments
39,413.12
Oleta Apartments
59,731.42
The petitioner filed her income tax return for 1956 with the district director at Tacoma, Washington, and did not report as taxable income therein any gain on amounts received with respect to the payments on the installment contracts. In the statutory notice of deficiency mailed to the petitioner, the Commissioner determined that petitioner had a long-term capital gain in 1956 in the amount of $3,547.02 on payments made or amounts realized in 1956 on the Dover Apartments installment sale, in the amount of $22,359.09 on the payments made or amounts realized in 1956 on the Doris Apartments installment sale, and in the amount of $45,198.53 on payments made or amounts realized in 1956 on the Oleta Apartments installment sale. The total of the long-term capital gains which the Commissioner found as having been realized *81 in 1956 by the petitioner from the three installment sales was $71,102.64. Petitioner concedes that the foregoing determination by the Commissioner is correct unless this Court determines that petitioner is entitled to a new basis with respect to said properties equal to their value at the time of the decedent's death on August 19, 1953. The respondent's position is predicated on the assumption that the Doris, Oleta and Dover Apartments were acquired by petitioner individually in 1943 as a result of the partitioning agreement dated December 31, 1942, by and between petitioner and her now deceased husband and that such apartments continued thereafter to retain their character as the separate property of petitioner. Such being the case, respondent contends that the original cost, i.e., the price paid by petitioner and her husband to acquire the properties, is the basis to be applied for gain or loss purposes upon the sale of the properties. Petitioner, on the other hand, is of the opinion that section 1012 of the 1954 Internal Revenue Code[1] is not applicable because the properties were not the separate property of the petitioner but remained community property *82 and, therefore, her basis is to be determined in accordance with the provisions of section 1014 of the 1954 Code. [2] Thus, it seems clear that the issue resolves itself into whether, prior to the death of petitioner's husband, the subject apartment buildings were the separate property of the petitioner or were owned by her in community with her husband. *83 Since our inquiry concerns the quality of petitioner's interest in the apartment buildings, it is axiomatic that we look to the laws of the State of Washington for our answer. Morgan v. Commissioner, 309 U.S. 78 (1940); Fidelity & Deposit Co. v. New York City Housing Auth., 241 F. 2d 142 (1957); Estate of William C. Allen, 29 T.C. 465 (1957). Under Washington law, a deed from a married man to his wife, or a deed from a married woman to her husband, of his or her interest in community property will convert said property into the separate property of the grantee spouse. Seaton v. Smith, 186 Wash. 447, 58 P. 2d 830 (1936); Revised Code of Washington, chapter 26.16.050. As we have previously indicated, the petitioner here and her husband entered into a written agreement to partition their community property. The agreement expressly declared that the purpose of the partition was to enable each of the parties to "own a portion of said property as his or her separate property." Pursuant to this agreement, the parties executed deeds conveying to each other the properties which each was to receive under the agreement. [3] The deeds were *84 thereafter duly recorded in the appropriate office of the County Auditor. In the absence of any evidence to the contrary, it would appear that the petitioner and her husband succeeded in effecting a severance of their community property into two separate estates. Hayden v. Zerbst, 49 Wash. 103, 94 Pac. 909 (1908). The petitioner contends, however, that notwithstanding the partition agreement, the petitioner and her husband continued to treat the income from these properties as community income; a fortiori, the properties were community property. The record discloses, however, that while petitioner and her husband for federal income tax purposes reported the income from these properties as community income, they nevertheless kept the income from the properties owned by each segregated and each maintained and controlled the income from their respective properties. We do not feel in view of such evidence that the mere reporting of the income from the properties as community income is sufficient to warrant a finding by this Court that for tax purposes the severance *85 of the community estate was a sham and without legal significance. [4] Accordingly, we hold that the petitioner owned the Doris, Dover and Oleta Apartments individually and not in community with her husband and that her basis upon the sale of said properties is to be determined in accordance with section 1012 of the 1954 Code. Petitioner asserts for the first time on brief, although she failed to raise the issue specifically in the pleadings, that the Commissioner, having elected to treat the properties as community property in the determination against her deceased husband's estate, is estopped in this proceeding from claiming that the properties were the separate property of the petitioner. Estoppel is a defense which must be specially pleaded. Lodi Iron Works, Inc., 29 T.C. 696 (1958); Estate of Thomas E. Steere, 22 T.C. 79 (1954), affirmed sub nom. *86 Rhode Island Hosp. Tr. Co. v. Commissioner, 219 F. 2d 923 (C.A. 1, 1955). In any event, even if the issue were properly before us, the petitioner has not shown the elements necessary to invoke estoppel. There was no concealment or misrepresentation of facts by respondent; petitioner offered no evidence that she acted or relied on respondent's determination in the administrative disposition of the estate tax matter; [5] and the question of whether the properties involved herein were community property or the separate property of the petitioner has not been adjudicated in any proceeding involving the petitioner or the estate. See and cf. Ethel West Cotnam, 28 T.C. 947 (1957), affd. this issue 263 F. 2d 119 (C.A. 5, 1959).
Finally, the petitioner has not shown that she has suffered any detriment due to the Commissioner's action in the estate tax case. United States Trust Co. of New York, 13 B.T.A. 1074 (1928). The additional tax which may have been assessed against the estate is a liability of the estate of Harry W. Crosby, *87 [6] a separate entity for tax purposes, and is not the liability of the petitioner individually. Elizabeth W. Boykin, 16 B.T.A. 477 (1929). Moreover, the fact that property is included in the gross estate of another and tax paid thereon does not in and of itself prevent the Commissioner, in determining for income tax purposes the gain derived by a petitioner upon the sale thereof, from using the original cost of the property as its basis. This is so by reason of the fact that the estate tax and the income tax are different in kind and wholly disparate in their incidence. Robert J. Kleberg et al., Executors, 31 B.T.A. 95 (1934); Helen G. Carpenter, 27 B.T.A. 282 (1932), appeal dismissed 68 F. 2d 995 (1934); Lang v. Commissioner, 289 U.S. 109 (1933). *88 Suffice it to say that the circumstances mentioned above distinguish this case from those cited by petitioner, namely, Vestal v. Commissioner, 152 F. 2d 132 (1945), and United States v. Brown, 86 F. 2d 798 (1936). Decision will be entered for the respondent. Footnotes
1. SEC. 1012. BASIS OF PROPERTY - COST. The basis of property shall be the cost of such property, except as otherwise provided in this subchapter * * *. ↩
2. SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections. (b) Property Acquired from the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: * * *
(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, Territory, or possession of the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or section 811 of the Internal Revenue Code of 1939↩;
3. The Dover, Doris and Oleta Apartments were a segment of the properties to be received by the petitioner.↩
4. It is to be noted inferentially that the Courts have tended to look with suspicion upon a party who seeks to invoke its aid in piercing a structure of his own design and making. Cf. Burnet v. Commonwealth Imp. Co. 287 U.S. 415 (1932); Romie C. Jacks, 19 B.T.A. 559↩ (1930).
5. The Dover Apartments had been sold by petitioner in 1946, seven years prior to the death of her husband.↩
6. The estate filed a claim for refund of federal estate tax under date of February 20, 1959, which claim was rejected by the district director on March 17, 1961. The estate is still possessed of its remedy under sec. 7422(a), I.R.C. 1954 and subject to the provisions of sec. 6532(a) may seek restoration of the taxes originally collected. Cf. J. T. Wurtsbaugh, 13 T.C. 1059 (1949), reversed per curiam on other grounds 187 F. 2d 975↩ (C.A. 5, 1951).