[No. 15871. Department Two. June 4, 1920.]

## C. A. RAWLINGS *et al., Respondents,* v. JOHN W. HEAL, JR., *Appellant.*[1]

HUSBAND AND WIFE (20, 58, 60)—WIFE'S SEPARATE ESTATE—PROCEEDS—COMMUNITY PROPERTY—PRESUMPTIONS—EVIDENCE. Since the status of community property is fixed at the time of its purchase, and a purchase money mortgage by both husband and wife was for the community, the fact that the balance of the purchase price was paid by the separate funds of the wife and on that account the deed was at her request taken in her name, is not sufficient to overcome the presumption that it became community property, except to the extent of her original investment, notwithstanding that the husband stated that it was her property and thereafter the mortgage was in part paid off with funds given to the wife by her father.

ADVERSE POSSESSION (37)—PLEADING—POSSESSION. An allegation in a complaint to quiet title that the plaintiffs and their grantors have been in adverse possession for more than the statutory period, is insufficient to show that the possession of one of the grantors was adverse to that of another grantor through whom defendant claimed.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered December 1,

[1]Reported in 190 Pac. 237.

1919, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Reversed.

*S. H. Kelleran* and *John W. Heal, Jr.,* for appellant.
*Bigelow & Manier,* for respondents.

TOLMAN, J.—The facts necessary for a decision of this case are practically all admitted, and may be briefly stated as follows: In 1899, Andrew Wright and Juliet C. Wright, husband and wife, acquired by purchase 320 acres of land in Thurston county, Washington, the purchase price of which was $2,240. This was paid by the turning in of a ten-acre tract of land belonging to the wife as her separate property, upon which the parties theretofore had made their home, at a valuation of $700, and by the giving of a mortgage on the land purchased, signed by both the husband and wife, to secure the payment of the balance of $1,540, the mortgage debt being evidenced by notes also signed by both the husband and wife. At the time of the purchase, the husband and wife being both present, the wife, according to her testimony, said: "I told him (her husband) that I had given up my home for this, and I thought he should put it in my name, and he did not object." The deed was therefore made to Juliet C. Wright as grantee. Thereafter the mortgage was paid with funds derived from the sale of a portion of the land, from the sale of logs from the land, and the remainder by money given to the wife for that purpose by her father.

In the year 1908, Andrew Wright died, leaving surviving him his wife and four children. His estate was not probated, but on January 23, 1909, Juliet C. Wright made and filed of record an affidavit in which she set forth that her husband died intestate, leaving no unpaid indebtedness, and naming the four children and

herself as his only heirs. On January 5, 1914, appellant recovered judgment in the superior court for Thurston county against Lona Wright Spillman, one of the children of Andrew and Juliet C. Wright, which judgment has never been satisfied. In January, 1919, Juliet C. Wright and the four children, including Lona Wright Spillman, joined in a deed conveying seventy acres of the tract of land acquired as heretofore stated to the respondents. The purchase money therefor was all paid to Juliet C. Wright except $800, which was evidenced and secured by a mortgage payable to her, which contained a provision that, if respondents were required to pay anything on account of appellant's judgment against Mrs. Spillman in order to protect their title, such payment should be credited upon the mortgage debt. Shortly after thus acquiring title, the respondents began this action against appellant to quiet their title as against his judgment.

There was also evidence offered that Andrew Wright in his lifetime joined with his wife in deeding portions of the land which were conveyed; that he executed a right of way agreement for a logging road across the land, and that he stated to the wife and to the children that the land belonged to the wife. The family made its home upon the land from the time of the purchase until the death of Mr. Wright, and the farm was operated mainly by the sons, who looked after the business affairs and testified to the payment of the purchase money mortgage and the taxes on behalf of their mother. From a decree made and entered on December 1, 1919, quieting title in respondents free from any claim or lien on the part of appellant, and awarding them judgment for costs, this appeal was taken.

The lien of appellant's judgment, which continued for six years after its rendition (*Seattle Brewing &*

*Malting Company v. Donofrio,* 59 Wash. 98, 109 Pac. 335; *Catton v. Reehling,* 78 Wash. 187, 138 Pac. 669), has now expired, and our first thought was that the question now before us is a moot one only; but as this point has not been raised or argued, and as the appellant, after the entry of the decree, which did not restrain him·from so doing, might have proceeded by the issuance and levy of an execution to acquire a specific lien and by sheriff's sale to acquire title to some part of the land, we have thought best to pass this question and inquire only whether or not appellant's judgment was a general lien on December 1, 1919, when the decree was entered.

"Where property is acquired during marriage, the test of its separate or community character is whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof; the presumption always being that it is community property, but this presumption may be rebutted by proof." *United States Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870.

It is now equally well settled in this state that the status of the property is fixed at the time of the purchase, and that, if the husband and wife unite in a promissory note secured by a mortgage, payable direct to their grantor as a part of the purchase price, or, by the same means, borrow the money to be used in payment from a third party, in either such event the money borrowed becomes community property, and to that extent the purchased property is community property. *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673, and cases there cited. An apparent exception to the latter part of this rule, as is pointed out in *Finn v. Finn,* 106 Wash. 137, 179 Pac. 103, arises when the spouse who furnishes the separate consideration for the purchase raises or secures the remainder of the

purchase price by a mortgage upon separate property theretofore owned by such spouse, thus clearly making the debt a separate one, even though the other spouse may be required to join in the note and mortgage to satisfy the lender. See, also, *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 Pac. 436.

Applying the law to the facts in this case, it is apparent that the request of the wife that she be named as grantee in the deed was based upon the fact that she was furnishing $700 of the purchase price from her separate estate, and the husband's consent, or want of objection thereto, was an admission of no more than that, to that extent, the property received should likewise be her separate estate. There is no evidence that, at the time of the purchase, the wife had any other separate estate or means with which to pay the mortgage debt, or that she then had any expectation of a subsequent gift from her father for that purpose, and the natural presumption is that the husband and wife then contemplated that they would, by their joint efforts and the use of the property purchased, pay the mortgage debt as it matured. Clearly, neither these facts, nor the fact that the wife was the business man of the community and thereafter paid the mortgage debt in whole or in part with her separate funds, nor the evidence that the husband in his lifetime referred to the property as belonging to his wife, are sufficient to overcome the presumption in favor of the community character of the property acquired during the existence of the marriage, no matter to which spouse the deed ran.

It is contended that Juliet C. Wright has been in the open, notorious and adverse possession of the property under consideration and has paid the taxes for a sufficient time to claim the protection of the statute of limitations.

Unfortunately the only allegation of the complaint under which the statute of limitations can be considered is:

"That the plaintiffs and their grantors have been in the open, notorious and adverse possession of said property for a period of forty years and have paid all taxes thereon for a like period of time."

Since Lona Wright Spillman was one of respondent's grantors, that allegation fails to show any possession by any one adverse to her, nor do we find any evidence in the record that Mrs. Wright's possession has been openly and notoriously adverse to her children or either of them.

We conclude, therefore, that, at the time of the acquisition, the title to an undivided 700/2240 of the property vested in Juliet C. Wright as her separate estate, title to the remainder then vesting in the community, and at the time of the sale to respondents, Lona Wright Spillman was the owner of an undivided one-eighth interest in the community estate, upon which appellant's judgment was a general lien at the time the decree was entered.

The judgment appealed from is therefore reversed.

HOLCOMB, C. J., FULLERTON, MOUNT, and BRIDGES, JJ., concur.