[No. 25987. *En Banc.* June 13, 1936]

BELL SEATON, *Respondent*, v. E. B. SMITH *et al., Appellants.*[1]

[1]Reported in 58 P. (2d) 830.

L. J. Gemmill, for appellants.

A. N. Corbin, for respondent.

BEALS, J.—The plaintiff in this action, Bell Seaton, and one George Seaton were, for some time prior to 1928, husband and wife. It being contemplated that the parties would shortly be divorced, they, under date December 13, 1928, entered into an agreement to divide their real estate, pursuant to which they deeded one to the other the different parcels of real estate which they owned, each deed providing that the property so conveyed should be the separate property of the grantee.

In an action instituted by Bell Seaton against her husband for the purpose of procuring a decree of divorce, an interlocutory order was entered February 9, 1929. This order approved the property settlement which had been made by the parties, and adjudged the respective parcels of property to be the separate estate of the spouse to whom they had been conveyed. No final decree of divorce was ever entered, as after the date of the interlocutory order the parties became reconciled and resumed the marital relation.

During the month of October, 1932, the defendant E. B. Smith (who will hereinafter be referred to as though he were the only party defendant) recovered a judgment in the superior court for Chelan county

against George Seaton and the community composed of George Seaton and the plaintiff, Bell Seaton, as his wife, the judgment being based upon a promissory note executed by George Seaton and bearing date March 20, 1931. The judgment by its terms was rendered against George Seaton and the marital community, but was not a separate judgment against Bell Seaton.

March 7, 1935, Bell Seaton, as sole plaintiff, instituted this action for the purpose of quieting her title to certain parcels of real estate described in her complaint as against the Smith judgment, alleging that the descriptions of real estate mentioned in her complaint were, one and all, her separate property, and that defendant's judgment constituted a cloud against her title thereto, which should be removed. The properties described in plaintiff's complaint fall in two classes: First, those which were quitclaimed to her by her husband, as above set forth; and second, properties which she subsequently acquired, as she claims, by exchanging therefor property which, under her agreement with her husband, had become her separate estate. She consequently contends that all the realty scheduled in her complaint is her separate estate, and that defendant's judgment is, in fact, not a lien thereon.

The action was tried to the court and resulted in a judgment in plaintiff's favor quieting her title to all the properties listed in her complaint, from which judgment defendant has appealed.

Appellant assigns error upon the overruling of his demurrer to the complaint, upon the making of three findings of fact, and upon the entry of judgment in respondent's favor.

Appellant argues that, as respondent alleges in her complaint that all the real property referred to is her separate estate, and that the judgment against

which she seeks to quiet her title was rendered only against George Seaton and the marital community, the complaint fails to state a cause of action; as, under the facts pleaded, appellant's judgment is, in fact, not a lien upon respondent's land and, in fact, constitutes no cloud upon the title thereto. The complaint does not allege that appellant is attempting to satisfy his judgment by levy upon respondent's property, but merely seeks to quiet respondent's title as against the apparent or possible lien of the judgment.

The complaint clearly states a cause of action. As to some of the property at least, title was taken in respondent's name after the abandonment of the divorce action, and such property is presumptively community in its nature and subject to the lien of a judgment rendered against the community. The owner of real estate which may, in fact, be liable to sale under execution issued on a judgment of record in the county in which the land is situated is not required to wait until a judgment creditor attempts to enforce his judgment against the land by execution and sale, but may, in the absence of bad faith or a mere desire to harass or annoy the judgment creditor, litigate the question of the liability of the property to the judgment in an action to quiet title. Were this not the rule, the owner of the land would be under the necessity of continually watching to see whether or not execution was issued on the judgment and levied upon his property, as no notice need be given of such proceedings. The property owner need not delay action until lapse of time may make proof of the true facts difficult. The trial court properly overruled the demurrer to the complaint.

The evidence indicates that Mr. and Mrs. Seaton had been living separate and apart one from the other for some time prior to December, 1928, and it is clear that they divided their property in contempla-

tion of divorce. Appellant argues that the subsequent reconciliation of the parties rendered the separation agreement and all steps taken or instruments executed pursuant thereto void and of no effect. The authorities which appellant cites in support of this proposition are not here in point. As between .the spouses, a reconciliation and resumption of the marital relation might often result in rendering void a separation agreement concerning property rights. That is not, however, the situation here presented. . Under our law, spouses may deal one with the other as with third parties, and may convey one to the other real property, with the result that such property becomes the separate estate of the grantee spouse. It is not contended that the deeds to respondent were anywise defective. They stand of record unimpeached by any evidence in the record before us, and are not subject to any such attack as appellant seeks to wage against them.

The obligation upon which appellant recovered judgment against George Seaton was dated long after the execution of the conveyances from Mr. Seaton to respondent, and the record contains nothing which justifies a holding that appellant's judgment constitutes a lien against any of the property covered by the deeds referred to.

█ Appellant next contends that his judgment is, in fact, a lien upon certain real estate acquired by Mrs. Seaton after the execution of the deeds from Mr. Seaton to her, which property respondent claims and the trial court held to be her separate estate, as having been purchased either with her separate funds or by exchange of her separate real property.

Appellant argues that the fact that George Seaton joined in certain deeds executed by Mrs. Seaton, conveying real property which Mr. Seaton had deeded to her, as above set forth, constitutes some evidence

in support of appellant's contention that the property should be held to belong to the community. The fact that one spouse joins in a deed conveying real estate which is claimed to be the separate property of the other spouse is generally entitled to little or no weight in determining whether or not the property was in fact separate in its character. A purchaser of real estate naturally requests that both spouses join in the deed, and the fact that they do so join is of little moment, and will not result in making the consideration received for the sale community property. *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088; *Guye v. Guye*, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Graves v. Columbia Underwriters*, 93 Wash. 196, 160 Pac. 436.

Of course, the strong presumption is that property acquired during coverture, for a valuable consideration, belongs to the community; and it is also true that the status of property, whether community or separate, is to be determined as of the date of its acquisition, that property shown to have been separate when acquired is presumed to have remained separate until the presumption is overcome by evidence, and that separate property continues to be separate as long as it can be clearly traced and identified. *In re Brown's Estate*, 124 Wash. 273, 214 Pac. 10; *Norman v. Levenhagen*, 142 Wash. 372, 253 Pac. 113; *Rogers v. Joughin*, 152 Wash. 448, 277 Pac. 988.

The principal question to be here determined is the character of the ownership of a tract of land in Chelan county, referred to by the witnesses as ''the Cedar Brae property.'' This land was conveyed, by deed dated May 15, 1931, from G. A. Sellar and Mary Louise Sellar, his wife, as grantors, to Bell Seaton and George Seaton, her husband. By quitclaim deed dated June 1, 1932, George Seaton conveyed to respondent

all his interest in the property covered by the deed from the Sellars, it being recited in the quitclaim deed that the same was executed for the purpose of perfecting Mrs. Seaton's title, George Seaton's name having been inadvertently included as one of the grantees. The evidence indicates that this quitclaim deed was executed prior to the institution by respondent of an action to quiet her title as against other judgments which had been rendered against Mr. Seaton, a decree in Mrs. Seaton's favor having been rendered September 6, 1932, as appears from a certified copy of this decree, which is part of the record. Respondent testified that the Cedar Brae property was, at the time of the conveyance above referred to, improved, and that these improvements were subsequently destroyed by fire, she receiving something over five thousand dollars as the proceeds of insurance policies thereon.

While the evidence is not very clear, it appears that Mrs. Seaton, or Mr. and Mrs. Seaton, acquired five different parcels of real estate after the property settlement of December, 1928, and the institution and subsequent abandonment of the divorce action. Two of the tracts had been conveyed, the other three being still, at the time of this action, undisposed of.

As above stated, the important question to be determined is the nature of the ownership of the Cedar Brae property; other lands having been purchased with the proceeds of the insurance policies which protected the improvements on that tract.

It clearly appears that, at the time Mr. and Mrs. Seaton divided their property, Mr. Seaton received property of substantial value, and was not without means. Respondent, testifying as a witness on her own behalf, stated that she had acquired the Cedar Brae property by conveying to the grantors several parcels of land which were her separate property.

Three deeds are in evidence whereby Mr. and Mrs. Seaton conveyed to Mr. and Mrs. Sellar different tracts of real estate. The deeds of December 13, 1928, from George Seaton to respondent are also in evidence, and none of the tracts which the Seatons conveyed to the Sellars is described in the deeds from George Seaton to respondent.

On cross-examination, respondent stated that she conveyed to one Tom Roddy a tract of land which she received in the property settlement, receiving other land in exchange, but she produced no deed from herself to Mr. Roddy, nor from Mr. Roddy to her. Respondent also testified that she conveyed some of the property settlement property to a Mr. Gehr, from whom she received a deed in exchange, but neither of these deeds is in evidence.

We have, then, in the record the deeds from Mr. Seaton to respondent, executed pursuant to the property settlement; then, over two years later, the conveyance from Mr. and Mrs. Sellar to Mr. and Mrs. Seaton, and at the same time three deeds from the Seatons to the Sellars. Later, appears the quitclaim deed from George Seaton to respondent, the recitals therein contained being, of course, *ex parte* statements of an interested party, made in anticipation of an action similar to this. In addition, we have the testimony of respondent and George Seaton to the effect that the properties conveyed to the Sellars were Mrs. Seaton's separate estate.

The burden of proof that the Cedar Brae land was her separate property rested upon respondent. She states that some of the papers were burned, but does not attempt to account for her failure to introduce in evidence certified copies of deeds showing to whom she sold the property which she received under the separation agreement, or from whom or when she received

title to the properties which she and Mr. Seaton conveyed to Mr. and Mrs. Sellar. The decree of the trial court, in so far as it affects property other than that which respondent received under the property settlement, rests largely, if not entirely, upon the mere bald statements of respondent and Mr. Seaton, to the effect that the Cedar Brae land was respondent's separate estate.

While, as above stated, the fact that two spouses join in a conveyance of property which is later claimed to have been the separate estate of one of them is little or no evidence that the property was community in its nature, and in this case we disregard entirely the fact that George Seaton joined with his wife in certain conveyances, the fact, however, that both respondent and her husband were named as grantees in the deed from the Sellars, taken in connection with the presumption that the land, having been conveyed during coverture for a valuable consideration, became community property, is entitled to weight. Respondent was, of course, greatly interested in the result of the action which she had instituted, and naturally her husband would desire that respondent prevail.

The Cedar Brae property was conveyed to the Seatons May 15, 1931. Mr. Seaton, when asked if the note which he signed in appellant's favor, and upon which judgment was later rendered against him, was not executed during the year 1931, did not deny that the note was signed during that year, but claimed that he did not remember. The quitclaim deed from George Seaton to respondent, covering the Cedar Brae property, bears date June 1, 1932. Apparently, at all times after 1930, Mr. and Mrs. Seaton were living together as husband and wife, Mr. Seaton having been engaged, to some extent at least, in gainful occupations.

Under the circumstances here shown, a strong pre-

sumption exists that the property belonged to the community, instead of to one spouse alone. This presumption was discussed by this court in the early case of *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398, the court apparently holding that the presumption could be overcome only by clear and convincing proof.

In the case of *Denny v. Schwabacher,* 54 Wash. 689, 104 Pac. 137, 132 Am. St. 1140, this court laid down as a fundamental principle the rule that

"Property acquired by purchase during marriage is presumed to be community property, and the burden rests upon the spouse asserting its separate character to establish his or her claim by clear and satisfactory proof. *Ballard v. Slyfield,* 47 Wash. 174, 91 Pac. 642."

The rule just referred to was followed by this court in the case of *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204, where the court said:

"In this state all property acquired after marriage by either the husband or the wife, or both, is community property, other than certain well known exceptions which are specified in the statute. Rem. & Bal. Code, §§ 5915 to 5917 inclusive (P. C. 95 §§ 25, 27). Property acquired during the existence of the marriage relation, whether the title thereto be taken in the name of the husband or that of the wife, or in their joint names, is presumed to be community property. 21 Cyc. 1651. This is a rule so well known and so generally established that it is not necessary to assemble the cases in support of the text cited.

"Where the claim is made that property acquired after marriage is not community property, the burden rests with the parties claiming the separate character of the property. The presumption as to the community character of the property may be overthrown only by evidence of a clear, certain, and convincing character. *In re Boody's Estate,* 113 Cal. 682, 45 Pac. 858; *Fennell v. Drinkhouse,* 131 Cal. 447, 63 Pac. 734, 82 Am. St. 361."

In the case of *Plath v. Mullins*, 87 Wash. 403, 151 Pac. 811, this court again referred to the

". . . well known rule that property acquired by purchase during the marriage is presumed to be community property, and that the burden rests upon the spouse asserting its separate character to establish his or her claim by clear and satisfactory evidence."

The rule was again referred to in *In re Curtis' Estate*, 116 Wash. 237, 199 Pac. 309, where lack of strong and convincing evidence, sufficient to overthrow the presumption of the community status of the property, was noted.

In the late case of *Hargis v. Hargis*, 157 Wash. 251, 288 Pac. 664, this court said:

"A spouse who contends that property, presumptively community, is in fact separate, such contention being urged for the purpose of defeating claims of *bona fide* creditors of the community, must present clear and convincing testimony in support of such contention."

While the opinion in the case last cited was modified by a later opinion (*Hargis v. Hargis*, 160 Wash. 594, 295 Pac. 742), the second opinion refers to the "admitted rule" above quoted.

Respondent in this action is not seeking to establish a right against her husband or his heirs, but seeks to defeat the claim of a *bona fide* creditor of the community, whose claim came into existence while the Cedar Brae property stood of record in the name of her husband and herself. While we are satisfied that the trial court correctly held that the property which was conveyed to respondent pursuant to the separation agreement became and remained her separate estate, after careful consideration of the evidence before us and the unexplained absence therefrom of record evidence which would have been important in supporting re-

spondent's case, if her theory was in fact correct, we are constrained to hold that the trial court erred in quieting respondent's title to the Cedar Brae property and land purchased with money received from insurance policies thereon as against appellant's judgment.

The cause is remanded to the superior court, with instructions to modify the decree appealed from in accordance with this opinion.

MAIN, MITCHELL, STEINERT, GERAGHTY, and BLAKE, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, the Cedar Brae property became respondent's separate estate by the original deed from her husband. The record does not contradict that status. The cases cited are not to the contrary.

The judgment should be affirmed entirely. I therefore dissent.

MILLARD, C. J., and TOLMAN, J., concur with HOLCOMB, J.