AUSTIN LEIGH CLAIBORNE, JOHN L. CLAIBORNE, AND JAY C. ALLEN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF LAURA ALLEN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89703.    Promulgated October 18, 1939.

*Jay C. Allen, Esq.,* and *Edgar R. Rombauer, Esq.,* for the petitioners.

*Edward C. Adams, Esq.,* for the respondent.

726

OPINION.

KERN: 1. The first and primary question involved is whether the respondent erred in allocating to the estate two-thirds of the aggregate of all property of both spouses. The respondent's argument, briefly put, is that the decedent declared in her will that "Mr. Allen has no community interest in my property"; that decedent was engaged for years in real estate deals and through her own efforts and earnings amassed the property in question; that Allen's capital contributions are unknown but if assumed to be equal with those of his wife, her contributions in personal services would offset this advantage, and that the same would be true even if his capital contributions were greater than decedent's; that in these circumstances for the respondent to have followed decedent's will and have treated all the property as her separate property would not have been unreasonable, and by so much the more was the action equitable which he did take, of treating only two-thirds of the property as decedent's in accordance with the terms of the agreement between Allen and decedent's two sons which took the place of the will; and, finally, regardless of whether the petitioner should have been satisfied or not, the respondent's determination has a statutory presumptive correctness which petitioner has not overcome.

We are unable to accept this reasoning. The evidence is clear that the only separate property of decedent which she held before her marriage to petitioner and still held at death was the lot at Second and Pine Streets; that, of the money owned by decedent prior to her marriage, $100,000 was invested by her in worthless second mortgages and wholly lost; and that most of the money which went into the purchase of the realty left at death came from the $154,000 received on the sale of certain tidelands to the Ames Terminal & Dry Dock Co., from decedent's gains on later sales, and/or from petitioner's capital contributions. Now the amount of the capital contributions made by petitioner has not been clearly established, but he is shown to have made as a lawyer from $25,000 to $40,000 a year and to have contributed a large part of this to his wife's investment account. The checks put in evidence show a contribution of over $66,000, and had it not been for the destruction of his records he doubtless could have shown a much greater contribution. That, of course, is speculation, but the evidence on why the records were destroyed by his wife as

well as why she drew a will seeking to deprive him of his interest in the marital community property is uncontroverted. In any event, whatever the source of the money with which the "investment account" was started, and whatever the amount of each spouse's contribution thereafter, the facts are clear that both made substantial contributions to this account and treated it throughout as a fund held in common. Most significant of all, we have the evidence of how the two spouses regarded the property in question, in the income tax returns filed by them from 1923 to 1932, inclusive: all the property except the "2nd and Pine" lot was returned as the property of the marital community. It is reasonable, therefore, to conclude that all such property *was* the property of the marital community, and that decedent's acts in throwing a cloud over this fact in her will moved from a combination of reasons, the strongest of which were the momentary spitefulness of an often sick, nervous, and jealous woman against her husband and her fear that the manner in which the joint enterprise had been conducted, with its inextricable intermingling of the funds of the two spouses, would deprive her two sons of the interest which she wished to leave them. The decedent's description of certain property in her will as her separate property is obviously not binding on us. *Commissioner* v. *Burke*, 62 Fed. (2d) 7, 12. The resulting agreement between petitioner and the two sons, which obviously in its apportionment of property interests has no bearing on the question before us, recognized clearly, it seems to us, these motives and fears and sought to reach a solution which, if not strictly just on the basis of legal rights, was at least equitable, considering petitioner's advanced age and needs.

Our conclusion, therefore, apart from any question of legal presumptions, would be that the petitioners have overcome the presumptive correctness of respondent's determination and have sustained the burden of proof on them of showing that the property in question was that of the marital community. When we appeal to the local law, we find that it raises presumptions which fortify this conclusion.

The relevant sections of the Washington statutes, Remington's Compiled Statutes of Washington (1922), vol. 2, are set out in the margin.[1] The property here was admittedly acquired after mar-

---

[1] § 6890. [5915.] Separate Property of Husband.

Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber, or devise, by will, such property without the wife joining in such management, alienation, or encumbrance, as fully and to the same effect as though he were unmarried.

§ 6891. [5916.] Separate Property of Wife.

The property and pecuniary rights of every married woman at the time of her marriage or afterward acquired by gift, devise, or inheritance with the rents, issues, and profits

riage. The decisions of the Washington Supreme Court, it appears, treat the earnings of the wife while living with her husband as community property, *Abbott* v. *Wetherby*, 6 Wash. 507; 33 Pac. 1020; and raise a definite presumption, in the absence of countervailing evidence of a convincing character, that property acquired by either spouse during coverture is that of the marital community. *Rawlings* v. *Heal*, 111 Wash. 218; 190 Pac. 237; *Seaton* v. *Smith*, 186 Wash. 447, 456; 58 Pac. (2d) 830. Under the law of Washington, had all the property been contributed during coverture by the husband, the wife would nevertheless have acquired a one-half interest in it; and the same would be true as to the husband had all the contributions been made by the wife. We can see no reason to adopt a different rule where the two spouses both contributed to build up a common estate, or to speculate on how much either contributed, as respondent does, apparently forgetting that the marital community rule's very object is to put an end to all such speculations. Respondent refers to an earlier decision of this Board in *Laura Allen*, 14 B. T. A. 223 (1928), saying that in that case decedent "successfully resisted efforts to include one-half the community income in her separate return for 1924." In that case we held on the authority of *United States* v. *Robbins*, 269 U. S. 315, that all of the community income, which had been returned by the husband as such together with the income from his separate property, was, because of the power of control over it given him by statute, properly taxable to him, and not as respondent contended, one-half to the decedent. We are unable to see any bearing which that decision has on the present question beyond the recognition which the spouses themselves gave, already adverted to, to the existence of a substantial community estate.

Respondent also relies on the decision of the Circuit Court of Appeals for the Ninth Circuit affirming this Board, 30 B. T. A. 1265, in *Shea* v. *Commissioner*, 81 Fed. (2d) 937, for the proposition that the

thereof, shall not be subject to the debts or contracts of her husband, and she may manage, lease, sell, convey, encumber or devise by will such property, to the same extent and in the same manner that her husband can, property belonging to him.

§ 6892. [5917.] Community Property Defined—Husband's Control of Personalty.

Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof.

§ 6895 [5929.] Separate Earnings of Wife, etc.

A wife may receive the wages of her personal labor, and maintain an action therefor in her own name, and hold the same in her own right, and she may prosecute and defend all actions at law for the preservation and protection of her rights and property *as if* unmarried.

§ 6896. [5921.] Earnings of Wife and Minor Children.

The earnings and accumulations of the wife and of her minor children living with her, or in her custody while she is living separate from her husband, are the separate property of the wife.

presumptive correctness of the respondent's determination can not be overcome by any presumption of state law. In that case, the court after setting forth the presumptions of California law upon which the taxpayer relied, continued as follows, at page 939:

These four propositions are thoroughly established as the law of California by its statutes and by the decisions of its courts. They are not applicable here, however, for the reason that the source of the income derived by the taxpayer is definitely ascertained to have been in large part the income derived from his separate property. The income derived from this capital investment is taxable to the husband as his income. The presumption that it is community property acquired after July 29, 1927, so far as applicable in a tax case, has been overcome.

It will be seen, therefore, that the fact that the husband had separate property which was the source of income to him was there "definitely ascertained." The court went on to point out that, where the existence of such separate property had been factually determined, the fact that its precise amount could not be ascertained would not justify this Board or itself in indulging the presumption of state law that all income was therefore community income, and the Commissioner's segregation of separate and community income must, therefore, be overcome by positive proof and, lacking such proof, must stand. To state these propositions is sufficient to show that they have no application here, where the separately held land still retained at death was proved, and where any capital gain originally derived from the conversion of other property held separately at marriage had long since been merged in a community investment which was regularly treated by both parties as community property for 10 years preceding the decedent's death.

In these circumstances, we are of the opinion that the property in question was the property of the marital community, and that only one-half of it, therefore, was properly includable in the decedent's gross estate.

2. *Deductions for taxes.*—Decedent died on January 21, 1934. Respondent contends that the lien of taxes on decedent's land did not attach until the first Monday in February 1934, that is to say, after her death, and consequently was not a burden on her estate at the moment of death and subject to deduction from the gross estate.

The applicable statutory provision is as follows (Remington's Compiled Statutes of Washington, 1922):

§ 11272. [9235.] Lien, When Attaches.

The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday of February of the succeeding year. The taxes assessed upon personal property shall be a lien upon all the real and personal property of the

person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property.

§ 11267 constitutes "all taxes and levies" "lawfully imposed or assessed" a lien on the real estate on which imposed or assessed, and gives the lien priority against all mortgages, judgments, debts or obligations. By § 1366, Remington's Compiled Statutes, title to real property of a deceased person vests in the heirs or devisees immediately upon the death. By section 303 of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932, the amount of state property taxes paid or payable is included by implication as a deduction allowable under "claims against the estate", and by Treasury Regulations 80 (1934 Ed.), article 37, "The deduction for property taxes is limited to such taxes as accrued prior to the date of decedent's death."

Petitioner relies on certain decisions of this Board which have since been distinguished as inapplicable to the present circumstances in *Theodore Plestcheeff*, 35 B. T. A. 508; affirmed in *Commissioner* v. *Plestcheeff*, 100 Fed. (2d) 62 (C. C. A., 9th Cir., Nov. 18, 1938). We think that that case is conclusive here and resolves the question in respondent's favor. There the taxpayer had received certain realty by devise on April 5, 1931, and we held that the lien for taxes assessed for 1931 did not attach until October of that year. We there said (p. 512):

In *Puget Sound Power & Light Co.* v. *City of Seattle*, 201 Pac. 449, 451, referring to *State of Washington* v. *Snohomish County*, 71 Wash. 320, the Supreme Court of Washington again emphasized the principles of that case by referring to it as follows:

* * * It was pointed out that in giving a lien for a real estate tax the statute contemplates a levy as well as an assessment, while as to personal property only an assessment is required; and it was decided that as the levy had not been made at the time of the purchase the estate took the real property free of any lien for taxes. * * *

\* \* \* \* \* \* \*

The question for our determination therefore is the basic date for tax incidence in the State of Washington.

In our opinion, the taxes assessed on real estate for the year 1931 did not, under the statutes of Washington as construed by its courts, attach and become a perfected lien on said realty prior to October 1931, in which month the tax levy is made in that state.

The Circuit Court of Appeals for the Ninth Circuit reached the same result, but rested its decision on the narrower ground that the case fell within the express provision of § 11272, *supra*, dealing with the situation of grantor and grantee. The instant case, it will be seen, does not fall within the Board's decision, but clearly falls within the decision of the Circuit Court, which held that the Wash-

ington courts had construed "grantee" to include a devisee, such as was there involved, and consequently "As thus construed, we think the lien did not attach until the February after respondents acquired the property, and they are entitled to the deduction." The assumption was made by the Circuit Court in that case that the lien would have attached on March 1 (before the testator's death) but for the statutory provision postponing that attachment between grantor and grantee, and the Commissioner apparently adopts the same view, see G. C. M. 21373, so that that case in all respects covers the situation here, and is binding upon us.

In these circumstances, we think that the deduction for all land taxes for 1933 should be denied, and do not consider, therefore, what decision, on a contrary view, would be proper in respect of the deductions claimed for taxes on the so-called Curtis block and the Sorrento Hotel. It would seem that the vesting of the realty in the devisees, with its consequent tax burden, was not suspended, as petitioner contends, by the decedent's provision in her will postponing distribution of her estate (see § 1366, cited above), and even if we are wrong about this, such a postponement would not create a tax burden existing before the decedent's death, and such alone under the statute may be deducted.

As to the $626.36 for 1933 taxes on personal property, the Sorrento Hotel furniture and fixtures, respondent points out that this was no longer the property of decedent at the time of death. Since the lien for taxes on personalty attaches on assessment on all personalty and realty of the taxpayer, § 11272, Remington's Compiled Statutes, quoted above, a different result would be necessary here. We agree with respondent, however, that, since we have held the property to have been community property, the principle of *Lang's Estate* v. *Commissioner*, 97 Fed. (2d) 867; cf. *Lang* v. *Commissioner*, 304 U. S. 264; would apply, and only one-half of this sum would be deductible.

3. *Executors' fees and attorneys' fees.*—Respondent makes no objection to the amount of these fees. His only objection appears to be that the executors' fees would be paid to the heirs of the estate, and that consequently "there are no adverse interests." Granted that the fixing of the fees would in the circumstances not be an arm's length transaction, we think that this objection would go only to the reasonableness of the amount of the fees, and, since concededly that is reasonable and the managing executor stated under oath that he would pay them in full, we can see no reason to disallow them. The same applies to the attorneys' fees, with added force, since Jay C. Allen's former and present law partners also have an interest in them.

We hold that the executors' and attorneys' fees claimed should be allowed in one-half the amount claimed, under the principle of the decision of the Circuit Court of Appeals for the Ninth Circuit in *Lang's Estate* v. *Commissioner, supra.*

*Decision will be entered under Rule 50.*